LAWRENCE COUNTY HIGHWAY DEPARTMENT and Aetna Insurance Company, Appellants,

v.

J. W. HARDIMAN, Appellee.

Supreme Court of Tennessee.

Dec. 22, 1975.

Keaton & Turner, Hohenwald, for appellants.

Boston, Weatherford & England, Lawrenceburg, for appellee.

## OPINION

COOPER, Justice.

This is a workmen's compensation case. The employee, J. W. Hardiman, was found to be totally and permanently disabled, from a work-connected heart attack, and was awarded benefits accordingly. The employer and its insurance company appealed insisting primarily there was no material evidence to support the trial judge's finding that the myocardial infarction arose out of and in the course of appellee's employment, or his finding that the disability of appellee was causally connected with his employment.

Mr. Hardiman was employed by the Lawrence County Highway Department in April, 1972, and worked without incident until November 22, 1972, when he suffered a myocardial infarction that caused severe damage to his heart. Mr. Hardiman testified he was a tractovator operator and his work assignment called for him to use a shovel and to manually loosen and remove chert from the tractovator bucket at the close of each working day. While performing this task on November 22, 1972, he suffered chest pains, sweated profusely, and vomited. He stopped work and the pain and sweating went away "after a little while," and he was able to finish cleaning the bucket. He and a fellow employee then left in Mr. Hardiman's automobile to drive from the chert pit to the nearby town. Mr.

Hardiman intended to go to his home and the passenger to go to the highway department garage. Both Mr. Hardiman and the employee testified that Mr. Hardiman vomited several times during the short drive. On reaching town, Mr. Hardiman went directly to the office of his family doctor and finding it closed, went immediately to the hospital emergency room where he was admitted for treatment. Mr. Hardiman remained in the hospital until December 3, 1972. He was readmitted to the hospital on December 12, 1972, suffering from a blood clot on the lung, and remained in the hospital under treatment until December 24, 1972.

Dr. James C. Hudgins, Mr. Hardiman's family physician, testified that Mr. Hardiman was hospitalized in October, 1970, for treatment of a "moderate" myocardial infarction and that, at that time, it was discovered that he had arteriosclerosis. Mr. Hardiman's condition improved under treatment and he was permitted to return to work, the only caution being that he should do light work for a time. According to Dr. Hudgins, Mr. Hardiman had no further serious illness and worked without incident until November 22, 1972, when he was admitted to the hospital suffering from "acute" myocardial infarction as evidenced by his classic symptoms of sweating, shortness of breath, paleness of color, and chest pains. Dr. Hudgins also stated that vomiting "frequently" goes with a myocardial infarction. Dr. Hudgins was of the opinion the work stress of cleaning the tractor bucket on November 22nd aggravated the arteriosclerosis and caused Mr. Hardiman to suffer the infarction. He also expressed the opinion that the subsequent blood clot resulted from the extended bed rest prescribed in treatment of the infarction. Dr. Hudgins further testified that the infarction had caused extensive damage to Mr. Hardiman's heart and that, as a result, he was permanently disabled from working.

The trial judge concluded "there was exertion on the job which overtaxed [appellee's] heart muscles and brought on a heart

attack." He further stated that "whether the results took place immediately at the job site as the petitioner claimed they did, or whether it was on the way back to town as the defendant's witnesses claimed they did, there [is] no question in the court's mind that the exertion in the cleaning of the bucket caused the heart attack and the ultimate disability of the petitioner."

Appellants point to testimony in the record that contradicts Mr. Hardiman's testimony as to events that occurred on the job site and argue that "if Mr. Hardiman] can recover under these facts, i. e., the uncorroborated testimony of an employee in the face of overwhelming testimony of disinterested parties to the contrary, then indeed, this court was right when it said:

> " 'One of the primary errors in the application of the Workmen's Compensation Laws in the United States is confusing them with a form of social, insurance as found in Great Britain.' *Armstrong v. Liles Construction Co., supra,* 215 Tenn. 678, 389 S.W.2d 261 at page 265 (1965)."

This argument is one to be made to the trial court, not this court. In workmen's compensation cases this court does not reweigh the evidence or attempt to see where the preponderance of the evidence lies on appeal, but must affirm even though the preponderance is against the trial judge's findings if those findings are supported by material evidence. *Strader v. United Family Life Insurance Company,* 218 Tenn. 411, 403 S.W.2d 765 (1966). Within the scope of our review of the record, there is material evidence in this case to support the trial judge's finding that appellee is totally and permanently disabled as the result of a myocardial infarction caused by the physical exertion he expended in cleaning the tractovator bucket on November 22, 1972.

Appellants further insist the trial judge was in error in ruling that it makes no difference whether Mr. Hardiman suffered a myocardial infarction while at work or while on the way home from work, citing cases where benefits have been denied employees who suffered heart attacks while off from work. There is no iron-clad rule which calls for payment of benefits to an employee who is disabled from a heart attack while on the employer's premises and for denial of benefits to an employee who is disabled from a heart attack that occurs while the employee is on the way home from work. The key to the recovery or denial of benefits is whether the disabling heart attack is precipitated by the physical activity and exertion of the employee's work. See *Coleman v. Coker,* 204 Tenn. 310, 321 S.W.2d 540 (1959), where, in discussing the causal relationship between employment and heart attacks, it was pointed out that:

> " '[We are] committed to the proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by ordinary exertion and usual strain of the work.' "

And,

> "Some of these cases in which we have determined that if the physical activity and exertion of an employee's work aggravates a pre-existing heart condition, precipitates the fatal heart attack, and thus hasten his death, such death is the result of accident arising out of and in the course of the employment within the meaning of our Workmen's Compensation Law. *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 260 S.W.2d 182; *Heron v. Girdley,* 198 Tenn. 110, 277 S.W.2d 402; *Cambria Coal Co. v. Ault,* 166 Tenn. 567, 64 S.W.2d 18; *Lucey Boiler & Mfg. Corp. v. Hicks,* 188 Tenn. 700, 222 S.W.2d 19."

In the instant case the trial judge found as a fact, and there is material evidence to support his finding, that "the exertion in the cleaning of the bucket caused the heart attack and the ultimate disability of the petitioner." In the face of such a finding, we agree with the trial judge that

it is immaterial whether the heart attack occurred while appellee was in the chert pit or in the automobile on the way to town from the chert pit.

Appellants also question the trial judge's action in allowing appellee to recover medical expenses incurred in the treatment of the pulmonary emboli (blood clot), contending there was no material evidence of causal connection between appellee's employment and the condition. As heretofore noted, Dr. Hudgins stated that the blood clot was caused, in his opinion, by the prolonged bedrest required for treatment of the work-connected myocardial infarction. This testimony is sufficient to support the award of medical expenses.

Judgment affirmed. Costs are adjudged against appellants and their sureties.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.